STATE, RESPONDENT, *v.* HOLLAND, APPELLANT.

(No. 2,575.)

(Submitted June 29, 1908. Decided July 18, 1908.)

[96 Pac. 719.]

*Secret Societies—Unlawful Wearing of Badges—Statutes—Constitutionality—Delegation of Legislative Power—Equal Protection of Laws.*

Constitutional Law—Delegation of Legislative Power—Local Option.
   1.   While it is competent for the legislature, without express constitutional authority, to leave it to the people of the different subdivisions of the state to determine by popular vote whether a particular law shall be operative in such subdivisions, the law submitted must be complete in itself when it leaves the hands of the legislature, the option to become or not to become subject to its requirements and penalties being the only question which can be left to the electors for decision.

Secret Societies—Unlawful Wearing of Badges—Statutes—Delegation of Legislative Power—Constitution.
   2.   *Held,* that section 1192, Penal Code, as amended by Laws 1907, page 24, providing that any person who shall wear or use the insignia or ceremonials of any society, order, or organization of ten years' standing in this state, "unless entitled to use or wear the same, under

the constitution and by-laws, rules, and regulations of such society or organization,'' shall be guilty of a misdemeanor, is unconstitutional and void, in that by leaving it to the different societies to supply in their secret work the description of the articles which it is unlawful to use or wear, the legislature delegated legislative powers to the orders mentioned.

**Same—Statutes—Equal Protection of Laws—Constitution.**
   3. The Act of 1907, referred to in the foregoing paragraph (Laws 1907, p. 24), is also obnoxious to the equal protection of the law clause in the Fourteenth Amendment to the federal Constitution, by exempting from the operation of the Act, the wives, daughters, sisters and mothers of members in good standing of the societies named therein.

**Same.**
   4. A statute which distributes its burdens unequally upon those who occupy the same relation to its subjects, or punishes one citizen for doing that which another may do with impunity, or abridges the liberty of one without imposing a like restriction upon another, does not furnish the equal protection of the laws guaranteed by section 1 of the Fourteenth Amendment to the federal Constitution.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

W. R. HOLLAND was convicted of unlawfully wearing the badge of an organization of which he was not a member, and appeals from the judgment. Reversed and remanded.

*Mr. C. A. Spaulding,* for Appellant.

The statute under consideration is a clear attempt to delegate legislative functions to the orders or societies mentioned therein, for thereby it is left to them to declare by their constitutions, by-laws, rules and regulations who shall be and who shall not be misdemeanants. That legislative functions cannot be delegated, save in the case of municipalities, does not admit of doubt. (*State* v. *Great Northern Ry. Co.,* 100 Minn. 445, 111 N. W. 289, 10 L. R. A., n. s., 250; Cooley's Constitutional Limitations, 6th ed., p. 137; *Anderson* v. *Manchester Fire Assur. Co.,* 59 Minn. 182, 50 Am. St. Rep. 400, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609; *O'Neil* v. *American Fire Ins. Co.,* 166 Pa. St. 72, 45 Am. St. Rep. 650, 30 Atl. 943, 26 L. R. A. 715; *State ex rel. Hahn* v. *Young,* 29 Minn. 474, 9 N. W. 737.)

The enactment is likewise violative of section 1 of the Fourteenth Amendment to the Constitution of the United States pro-

hibiting any state from making or enforcing any law which shall
abridge the privileges or immunities of citizens of the United
States. (*Ex parte Dickey,* 144 Cal. 234, 103 Am. St. Rep. 82,
77 Pac. 924, 66 L. R. A. 928; *Mugler* v. *Kansas,* 123 U. S. 661,
8 Sup. Ct. 273, 31 L. Ed. 209; *Ex parte Whitwell,* 98 Cal. 73,
35 Am. St. Rep. 152, 32 Pac. 870, 19 L. R. A. 727; *In re Smith,*
143 Cal. 368, 77 Pac. 180; *Lawton* v. *Steele,* 152 U. S. 133, 14
Sup. Ct. 499, 38 L. Ed. 385; *Frost* v. *City of Chicago,* 178 Ill.
250, 69 Am. St. Rep. 301, 52 N. E. 869, 49 L. R. A. 657; *Town
of Kusciusko* v. *Slomberg,* 68 Miss. 469, 24 Am. St. Rep. 281,
9 South. 297, 12 L. R. A. 528; *Ex parte Hayden,* 147 Cal. 649,
109 Am. St. Rep. 183, 82 Pac. 315; *Ex parte Drexel,* 147 Cal.
763, 82 Pac. 429, 2 L. R. A., n. s., 588.)

The clause contained in the Act, ''provided this shall not ap-
ply to the wives, daughters, sisters or mothers of members of
these orders in good standing,'' violates both section 26 of Article
V of the Constitution of Montana, in that it grants to those
so excepted a special privilege and immunity, and section 1 of
the Fourteenth Amendment to the Constitution of the United
States, in that it denies to those not so excepted the equal pro-
tection of the law. (*State* v. *Cudahy Packing Co.,* 33 Mont. 179,
114 Am. St. Rep. 804, 82 Pac. 833; *Hotchkiss* v. *Marion,* 12 Mont.
218, 29 Pac. 821; *Ex parte Sohncke,* 148 Cal. 262, 113 Am. St.
Rep. 236, 2 L. R. A., n. s., 813, 82 Pac. 956; *Rodge* v. *Kelly,* 88
Miss. 209, 117 Am. St. Rep. 733, 40 South. 552, 11 L. R. A.,
n. s., 635; *Garrabad* v. *Dering,* 84 Wis. 585, 36 Am. St. Rep. 948,
54 N. W. 1104, 19 L. R. A. 858; *State* v. *Loomis,* 115 Mo. 307,
22 S. W. 350, 21 L. R. A. 789; *People* v. *Williams,* 189 N. Y.
131, 121 Am. St. Rep. 854, 81 N. E. 778, 12 L. R. A., n. s., 1130;
*In re Keymer,* 148 N. Y. 219, 42 N. E. 667, 35 L. R. A. 447;
*State* v. *Gabroski,* 111 Iowa, 496, 82 Am. St. Rep. 524, 82 N. W.
959, 56 L. R. A. 570; *State* v. *Shedroi,* 75 Vt. 277, 98 Am. St.
Rep. 825, 54 Atl. 1081, 63 L. R. A. 179; Cooley's Constitutional
Limitations, 6th ed., p. 482; *Low* v. *Rees Printing Co.,* 41 Neb.
127, 43 Am. St. Rep. 670, 59 N. W. 362, 24 L. R. A. 702; *Bailey*
v. *People,* 190 Ill. 28, 83 Am. St. Rep. 116, 60 N. E. 98, 54 L.

R. A. 838; *Commonwealth* v. *Hana,* 195 Mass. 262, 81 N. E. 149, 11 L. R. A., n. s., 799; *Bedford Quarries Co.* v. *Bough,* 168 Ind. 671, 80 N. E. 529, 14 L. R. A., n. s., 418; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 539, 22 Sup. Ct. 431, 46 L. Ed. 679; *Lochner* v. *New York,* 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937; *Denver* v. *Bach,* 26 Colo. 530, 58 Pac. 1089, 46 L. R. A. 848; *Ex parte Knapp,* 127 Cal. 101, 59 Pac. 315; *Slocum* v. *Bear Valley Co.,* 122 Cal. 555, 68 Am. St. Rep. 68, 55 Pac. 403; *Frorer* v. *People,* 141 Ill. 171, 31 N. E. 395, 16 L. R. A. 492; *State* v. *Ashbrook,* 154 Mo. 375, 77 Am. St. Rep. 765, 55 S. W. 627, 48 L. R. A. 266; *Ruhstrat* v. *People,* 185 Ill. 133, 76 Am. St. Rep. 30, 57 N. E. 41, 49 L. R. A. 181; *Eden* v. *People,* 161 Ill. 296, 52 Am. St. Rep. 365, 43 N. E. 1108, 32 L. R. A. 659; *Re Thomas A. Morgan,* 26 Colo. 415, 77 Am. St. Rep. 269, 58 Pac. 1071, 47 L. R. A. 52; *State* v. *Walsh,* 136 Mo. 400, 37 S. W. 1112, 35 L. R. A. 231; *Union County Bank* v. *Ozan Lumber Co.,* 127 Fed. 206; *Kellyville Coal Co.* v. *Harrier,* 207 Ill. 624, 99 Am. St. Rep. 240, 69 N. E. 927.) If there are cases holding contrary to those above cited, they are, as was said in *Ex parte Drexel, supra,* "not of sufficient consequence to ruffle the great current of authority which runs the other way."

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

Appellant states in his brief "that legislative functions cannot be delegated save in the case of municipalities." In this statement appellant assumes that such law is a delegation of legislative functions. The authorities, however, do not bear out such assumption. (See *Samuelson* v. *State,* 116 Tenn. 470, 115 Am. St. Rep. 805, 95 S. W. 1012; *State* v. *Briggs,* 45 Or. 366, 77 Pac. 750; petition for rehearing overruled, 78 Pac. 361; *Ex parte McManus,* 151 Cal. 331, 90 Pac. 702; *Trinity County* v. *Mendocino County,* 151 Cal. 279, 90 Pac. 685; *State* v. *Wagener,* 77 Minn. 483, 77 Am. St. Rep. 681, 80 N. W. 633, 46 L. R. A. 442; *Elwell* v. *Comstock,* 99 Minn. 261, 109 N. W. 113, 698; *State* v. *Southern Ry. Co.,* 141 N. C. 846, 54 S. E.

294; *In re Kollock,* 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813.)

The clause of section 1 of the Fourteenth Amendment, referred to by appellant, is intended only to prohibit the state from abridging the privileges or immunities given or granted by the federal Constitution, statutes or treaties. An examination of the privileges and immunities given and accorded by the federal government to citizens of the United States shows clearly that the law under consideration in no way abridges them. For an exhaustive discussion of "privileges and immunities," as such terms are used in the Fourteenth Amendment, and a full review of the decisions thereon, see Brannon on the Fourteenth Amendment, pp. 45-96.

However, the argument of appellant goes more to the question of interference with his personal liberties than to the abridgment of privileges or immunities. Both the federal and state Constitutions provide that no person shall be deprived of life, liberty or property without due process of law. (See *Butchers' Union* v. *Crescent City,* 111 U. S. 757, 4 Sup. Ct. 652, 28 L. Ed. 585, for definition of "liberty" as used in the federal Constitution.) For a full discussion of this question and review of the cases, see Brannon on the Fourteenth Amendment, pp. 109-115.

The rights and liberty guaranteed by the Constitution relate to more substantial things than the mere caprice or whim of a person who wears the badge of some lodge or order because it may be ornamental, or to impose upon members of the lodge, or to deceive the public as to his standing in the community, or for any other reason that might prompt him to wear such badge.

Appellant is not in position to urge the objection relative to the proviso exempting the wives, daughters, sisters or mothers of members of the orders mentioned from the operation of the Act. (8 Cyc. 789; *McKinney* v. *State,* 3 Wyo. 719, 30 Pac. 293, 16 L. R. A. 710; *In re O'Brien,* 29 Mont. 530, 75 Pac. 196.)

The legislature has the authority and right to enact penal laws regulating certain classes of persons, and so long as the persons in the same class are subject to the same punishment for the violation of the law they have equal protection of the laws. Under the law in question *all persons,* not members of an organized society, etc., of ten years' standing, or the wife, daughter, sister or mother of such a member, who wear the badge of such order, are liable to the same punishment. All persons liable to such punishment for a violation of such law are similarly situated; that is, they are not members in good standing, or the wives, daughters, sisters or mothers of a member in good *standing. They are in the same class and no distinction is made as to race, color or sex.* Therefore, the only question to be determined is whether the classification made by the legislature is based upon a reasonable distinction or on purely arbitrary grounds. In the following cases it has been held that the classification was a reasonable one, and therefore not unconstitutional: *Plessy* v. *Furguson,* 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256; *Cumming* v. *Board of Education,* 175 U. S. 528, 20 Sup. Ct. 197, 44 L. Ed. 262; *State* v. *Woodman,* 26 Mont. 348, 67 Pac. 1118.

If the law is a reasonable classification, so far as the actual members of the lodge are concerned, it certainly is not unreasonable to also include the wives, daughters, sisters and mothers in the same classification. (See *State* v. *Fraternal Knights,* 35 Wash. 338, 77 Pac. 500.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the Court.

On May 4, 1908, the appellant was charged by complaint filed in a justice's court in Helena township, Lewis and Clark county, with a misdemeanor, in the violation of section 1192 of the Penal Code of 1895, as amended by Session Laws of 1907 (Sess. Laws, 1907, p. 24), in that he did between certain mentioned dates during this present year wear upon the

lapel of his coat an elk's head, knowing the same to be the emblem, insignia, badge and button of the Benevolent and Protective Order of Elks of the United States of America, said order being of more than ten years' standing in the state of Montana. Upon a trial by the justice he was found guilty and sentenced to pay a fine. Upon appeal to the district court he was again found guilty and sentenced to pay a fine. This appeal is from the judgment.

At the trial in the district court, the parties submitted to the court, without a jury, an agreed statement of the facts in order to clear the issues and obtain a decision upon the question of law involved, to-wit, whether the statute under which the charge was brought is a valid exercise of legislative power. This statement is as follows:

"(1) That the said defendant, W. R. Holland, did at the county of Lewis and Clark, state of Montana, between the first day of April and the third day of May, 1908, wear on the lapel of his coat an elk's head, knowing the same to be the insignia, badge and button of the Benevolent and Protective Order of Elks of the United States of America.

"(2) That in so wearing said elk's head the said defendant, W. R. Holland, did not wear or use the same to obtain aid or assistance thereby.

"(3) That said Benevolent and Protective Order of Elks of America is an order of more than ten years' standing in the state of Montana.

"(4) That the said W. R. Holland at all times aforesaid was not, under the constitution, by-laws and regulations of said order aforesaid, entitled to wear said elk's head."

The amended section reads as follows: "Sec. 1192. Any person who willfully wears the badge of the Grand Army of the Republic, the insignia, badge or rosette of the Military Order of the Loyal Legion of the United States, or of the Military Order of Foreign Wars of the United States, or the badge or button of the United Spanish War Veterans, or the Order of Patrons of Husbandry, or the Benevolent and Protective Order

of Elks of the United States of America, or the Order of the Knights of Pythias, or Labor Organizations, or any society, order or organization of ten years' standing in the state of Montana, or uses the name to obtain aid or assistance within this state, or willfully uses the name of such society, order or organization, the title of its officers, or its insignia, rituals or ceremonials, unless entitled to use or wear the same under the constitution and by-laws, rules and regulations of such order, or of such society, order or organization, shall be guilty of a misdemeanor, and, upon conviction, shall be punished by imprisonment for a term not to exceed ninety days in the county jail, or a fine not to exceed two hundred and no-100 ($200.00) dollars, or by both such fine and imprisonment, provided this shall not apply to the wives, daughters, sisters or mothers of members of these orders who are in good standing.''

Though the language of section 1192, as it stood prior to the amendment, is somewhat crude, its purpose is apparent. It is well known that one of the professed purposes of most of the fraternal societies, now grown so numerous, is aid and relief to unfortunate and distressed members and their families. In many of them the individual member, when overtaken by sickness and its resultant distress, is entitled to call for relief from the society as a matter of right. It may be, and generally is, temporary financial aid that is required, though the humane and charitable duty of relief extends also to the kindly office of visitation in sickness and of consolation and sympathy in case of death in the family or other similar misfortune. It goes even to the extent of requiring attention to the moral welfare of erring brothers, and the individual member is recreant to his duty under his oath, if, when it comes to his knowledge that a fellow member is inclined to evil ways, he does not exert himself by the use of all proper means to restore the wayward one to a sense of his duty and obligation to himself and his family. Most of them, also, inculcate the sentiment of patriotism, advocate obedience to the constituted authority of government, both federal and state, and encour-

age temperate and just conduct in private life.  Some of them
are of recent growth, but others have a long, honorable history.
To this latter class belong those which by the character of their
individual membership, measured according to a high stand-
ard of rectitude and moral fitness and services rendered to so-
ciety, have won a high place in the estimation of the people.
If we may judge by what we see of them, all of them make
for good, in that they encourage the practice of charity and
inculcate the broad principle of brotherhood and equality of
mankind.  It is not unnatural, then, that there should be found
evil-disposed persons who, ever ready to prey upon the com-
munity, attempt by pretense and fraud to gain substantial bene-
fits from these societies and their members to which members
in good standing only are entitled.  One of the means em-
ployed most frequently is the use of the badge or button of a
particular society to support a pretension of membership in
aid of the application for substantial relief.  The average man,
busy in the pursuit of his business and without time to investi-
gate, but ready to relieve an apparently deserving unfortunate
fellow-member, is thus deceived and defrauded.  It was to pre-
vent this species of petty fraud that the provision was enacted.
The amended section, however, goes very much further.  Con-
fining our analysis of its provisions to those especially appli-
cable to the Protective Order of Elks of the United States of
America, it declares it to be a misdemeanor, punishable by fine
and imprisonment or both, for any one not entitled under the
constitution, by-laws, rules and regulations of the order (1)
willfully to wear the badge or button of the order; or (2) to
use its name to obtain aid or assistance in this state; or (3)
to use the title of its officers, or its insignia, rituals, and cere-
monials.  The protection is apparently extended to those or-
ders only which have maintained an organization in the state
for the past 10 years.  The added proviso excepts from the
operation of the act the wives, daughters, sisters, and mothers
of Elks in good standing.  From the third prohibition mention
of the name may be omitted as a repetition, because the second

includes this; for use of the name to secure aid implies a will-
ful use of it, whether it be for the purpose of defrauding mem-
bers of any of these societies or to aid the pretense of moral
character or social standing, which it is supposed the members
of a particular order may have in the community. Making
allowance for the foregoing express limitations, the purpose of
the legislature was to extend the application of the Code pro-
vision so as to include any sort of use of the badge or button,
or of the name, rituals, or ceremonials of the order by any
person not entitled to wear or use them under the constitution,
by-laws, rules, or regulations of the order.

One of the contentions made by counsel for appellant is that
the act is void because it manifestly delegates legislative power
to the various orders mentioned. ''In our Republican system
a written constitution is the great charter by which the sov-
ereign people establish government, and define, distribute and
limit its powers. In both the federal and state governments
the three fundamental powers—the legislative, executive and
judicial—have been separated into three distinct departments.
This separation is deemed of the utmost importance and ab-
solutely essential to the existence of a just and free govern-
ment.'' (Sutherland on Statutory Construction, sec. 2.) So
important has it always been regarded that our constitutional
convention, following the example of those of the other states,
created the three departments, distributed to them their appro-
priate powers, and then embodied the prohibition that ''no per-
son or collection of persons charged with the exercise of powers
properly belonging to one of these departments shall exercise
any powers properly belonging to either of the others, except
as in this Constitution expressly directed or permitted.''
(Constitution, sec. 1, Art. IV.) All the powers of government
being thus vested in the agencies created for their adminis-
tration, these agencies cannot lawfully delegate them to any per-
son or collection of persons, or even to the people themselves
except so far as the Constitution directs or permits. (6 Am. &
Eng. Ency. of Law, 2d ed., 1022; Cooley's Constitutional Limi-

tations, 163.) The legislature is empowered to make, alter and repeal laws. The duty to enforce them falls upon the executive. The courts must perform the office of interpreting and expounding them as the law of the land. "Under a well-balanced Constitution the legislature can no more delegate its proper function than can the judiciary." (*Case of Borough of West Philadelphia,* 5 Watts & S. (Pa.) 281.) "That Congress cannot delegate legislative power to the president is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." (*Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294.) A citation of cases may be found by reference to notes in 6 American & English Encyclopedia of Law, second edition, page 1021.

In some of the states there is manifested a disposition in the people to retain the right to be consulted upon important matters of general legislation, as well as to have matters of local interest referred to the electors of the locality particularly interested in the subject of legislation. This power to delegate, however, in whatever form it may appear, is dependent upon express constitutional provisions, which, save in so far as they create exceptions, do not affect the general rule. While all this is true, it is held by the great weight of authority that it is competent for the legislature, without express constitutional authority, to leave it to the people of the different subdivisions of the state to determine by popular vote whether a particular law shall be operative therein. Familiar examples of this character of legislation are local option laws regulating or prohibiting the sale of intoxicating liquors, the running at large of cattle, and the like. In such cases, however, the particular law must be complete in itself when it leaves the hands of the legislature; the option to become or not to become subject to its requirements and penalties being the only question to be submitted to the electors. On this subject this court in *Re O'Brien,* 29 Mont. 530, 75 Pac. 196, said: "If the law is complete in all its parts, it is an expression of the legislative will none the less that the contingency upon

which it takes effect in any particular locality is made to depend upon a favorable vote of that locality."

Is the Act before us subversive of these principles? We think it is. It is impossible for a citizen upon reading the text of it to determine when he is subject to its penalties. Whether or not the wearing of a particular article is prohibited must be ascertained, if at all, not by an examination of the statute, but by an examination of the constitution, by-laws, rules and regulations of one or more societies, perhaps secret in character, to which only members can gain access. The guilt of the citizen is made to depend, not upon a prohibition to wear or use a particular thing described in the statute so that it may be recognized, but for which he must himself supply the description by information derived by inquiry from sources to which he in many instances is denied access. Furthermore, the insignia, rituals and ceremonials of fraternal societies are subject to change from time to time, such change being dictated by choice, which may be made at any time. To avoid the penalty of the statute the citizen, whether a member of any other society or not, must keep himself informed of these changes or he will be liable to the penalty. May it be left to the choice of any person or body of persons to determine whether or not another may wear this or that article or ornament, or whether he with others may adopt any ritual, ceremonial, or name he chooses? The immunity of the citizen is not to be made dependent upon a permissive rule or regulation of a society of which he has no knowledge or can obtain no knowledge.

In *O'Neil v. American Fire Ins. Co.*, 166 Pa. 72, 45 Am. St. Rep. 650, 30 Atl. 943, 26 L. R. A. 715, the supreme court of Pennsylvania in discussing a statute providing for the adoption of a standard policy of fire insurance, but leaving the form of the policy to be provided by the secretary of state and filed in his office for reference, well said: "The elementary books divided a statute into three parts—the declaratory, the directory and the vindicatory. In this statute the legislature furnished the first and third. It delegated the preparation of the second. It declared, in effect,

the need of a standard form of policy. It provided punishment for the failure to use such form when provided; but it turned the preparation of the form over to its appointee, and gave him six months in which to do his work and file a copy of it in his office. Whoever might be interested in knowing the directory part of the statute, and understanding what it was he was required to do, had to go beyond the Act of assembly, and inquire of the appointee of the legislature what it was he had filed in his office, of which the people of the commonwealth were bound to take notice at their peril. It will not do to say that the preparation of the form was an unimportant matter of detail, or an act partaking of an executive or administrative character. It was the sole purpose of the Act. It was the only subject named in its title. The enforcement of the standard form of policy was the only object of its penalties. Take out the form prepared by the insurance commissioner, and to be found in some pigeonhole in his office, and the Act is without meaning or effect. It is completely eviscerated. We do not see how a case could be stated that would show a more complete and unconstitutional surrender of the legislative function to an appointee than that presented by the Act of 1891. By its provisions the legislature says, in effect, to its appointee: 'Prepare just such a policy or contract as you please. We do not care to know what it is. The governor shall have no opportunity to veto it. File it in your office, and we will compel its adoption, whether it is right or wrong, by the punishment of every company, officer, or agent who hesitates to use it.' " Upon the same question, see, also, *Anderson* v. *Manchester Fire Ins. Co.,* 59 Minn. 182, 50 Am. St. Rep. 400, 60 N. W. 1095; 63 N. W. 241, 28 L. R. A. 609; *State* v. *Great Northern Ry. Co.,* 100 Minn. 445, 111 N. W. 289, 10 L. R. A., n. s., 250. So here the sole purpose of the legislation was to prevent frauds and abuses perpetrated by the use of certain articles. The legislature declared the prohibition and provided the penalty for its violation, but left it to different societies to supply by declaration in their secret work from time to time, as their varying choice might dictate, the description of the articles themselves.

In our opinion this contention of the appellant must be sustained.

Another contention is that the law is void for the reason that it makes an arbitrary classification of citizens who occupy exactly the same relation to the subject-matter with which it deals, and is therefore obnoxious to the Fourteenth Amendment to the federal Constitution. This contention, we think, must also be sustained. The proviso makes an exception of the wives, daughters, sisters and mothers of members of any of these societies in good standing. Why should this exception be made? The only answer is that it was for purely sentimental reasons influencing the legislative mind, based upon the notion that women who have certain legal and blood relationship to the members occupy a different legal relation to the subject of legislation. "By the phrase 'equal protection of the laws,' is meant equal security under them to everyone, under similar terms, in his life, his liberty, his property, and in the pursuit of happiness, and exemption from any greater burdens and charges than such as are equally imposed upon all others under like circumstances. Hence a statute bearing alike upon all individuals of each class or on all districts in like conditions with uniformity does not deny the equal protection of the laws; but such classification must not be arbitrary and without reasonable grounds on which it may be based." (8 Cyc. 1059.) *E converso,* if a particular statute distributes its burdens unequally upon those who occupy the same relation to its subject, if it punishes one citizen for doing that which another may do with impunity, if it abridges the liberty of one without imposing a like restriction upon another, it does not furnish the "equal protection of the laws," or the protection of equal laws, which is guaranteed by the amendment. "The equal protection of the laws is a pledge of the protection of equal laws." (*Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220.)

In *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 82 Pac. 833, it was held by this court that a statute prohibiting the formation of combinations or trusts for the pur-

pose of controlling the prices of products or destroying competition, which excepted from its operation persons engaged in horticulture or agriculture, was void for the reason that it bore unequally upon different persons in the community engaged in the same or similar pursuits. On principle, that case cannot be distinguished from this.

Speaking generally, all persons in the community are free to use or wear any article they please. On the assumption that the legislature may deal with the subject at all—and we think it may, in the exercise of its police power, to the extent of preventing petty frauds—it cannot arbitrarily prohibit the use of an article to one person, leaving another at liberty to use it as he pleases. The women who are excepted from the operation of this statute, bear exactly the same relation toward the subject of the legislation as all other women in the community, as well as men who are not members of any of these societies. There is no possible reason, except a sentimental one, why they should be exempted from the penalties of the law.

As desirable as it may be that all these fraternal societies be guaranteed the exclusive use of their badges, rituals and ceremonials, they cannot, perhaps, have such guaranty, unless by virtue of a patent or copyright secured under the federal laws governing the subject. Upon the question whether they may thus, or by any other means, secure the right, we express no opinion.

The judgment is reversed, and the cause is remanded to the district court with directions to dismiss the complaint.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.