STATE EX REL. BONNER, RELATOR, *v.* DIXON, GOVERNOR, ET AL., RESPONDENTS.

(No. 4,787.)

(Submitted January 17, 1921. Decided February 4, 1921.)

[195 Pac. 841.]

*Constitution—Initiative Laws—State Bonds—"Appropriation" —Power of People—Title of Act—Sufficiency—Filing Petitions—Time—Procedure.*

Statutes—Constitutionality—Presumptions.
    1. The constitutionality of a legislative enactment is *prima facie* presumed, and every intendment is in favor of upholding it unless it appears unconstitutional beyond a reasonable doubt.
Same—Legislature—Powers—Constitutional Limitations.
    2. The declarations of the Constitution are conclusive upon the legislature and prevent the enactment of any law which has for its purpose the extinction or limitation of the powers conferred by the constitutional provisions.
Initiative Laws—Power of People—Constitutional Limitations.
    3. In the exercise of their prerogative to initiate laws under Article V, section 1, of the Constitution, the people are subject to

---

1.  Construction of initiative or referendum provision in Constitution, statute or municipal charter, see note in Ann. Cas. 1916B, 819.

the same constitutional limitations as are applicable to the legislative assembly.

Statutes—Legislature—People—Plenary Powers.

4. In so far as the Constitution offers no restriction, the law-making body, whether it be the people under the initiative or the legislative assembly, has plenary legislative power.

Initiative Laws—Constitution—"Appropriation" Measures.

5. *Held,* that the word "appropriations" used in section 1 of Article V of the Constitution excluding the right to initiate (or refer) laws relating to appropriations from the power of the people in their lawmaking capacity, means the setting apart of a portion of the public funds for a public purpose, or a specific designated fund *in esse* or for which provision has been made, it not being necessary, to constitute a valid appropriation, that the fund be then in the treasury.

Same—State Bond Issues—Not Appropriation Measures.

6. *Held,* that moneys raised from the sale of state bonds for a specified purpose and placed in the treasury to the credit of a particular fund is not an "appropriation" within the meaning of section 1, Article V, of the Constitution, and that therefore Initiative Measure No. 19, providing for the issuance and sale of bonds the proceeds of which are to be used for the construction, repair, *etc.,* of buildings at the state educational institutions, *etc.,* is not an appropriation Act, and hence was not excluded from the legislative prerogative of the people.

Same.

7. Initiative Measure No. 19 is self-executing, and an appropriation of the moneys placed in the fund created by it is not requisite as a condition precedent to their being paid out on proper warrant.

Same—Bond Issues—Constitution—Sufficiency of Tax Levy—Legislative Question.

8. The fact that Initiative Measure 19 is indefinite as to the time during which it shall be operative and the tax levy provided for is limited, *held,* not to render it violative of section 2, Article XIII, of the Constitution, the question whether the tax provided for prove to be sufficient or insufficient to pay principal and interest on the bonds being one addressed to legislative action, in the absence of an affirmative showing that it is not sufficient.

Same—Constitution—Singleness of Subject.

9. *Held,* that Initiative Measure No. 19 does not contravene the constitutional provision (Article V, section 23) forbidding the enactment of any law containing more than one subject which shall be clearly expressed in its title.

Same—Procedure—Substantial Compliance Sufficient.

10. In initiating a measure under the power reserved to the people by section 1, Article V, of the Constitution, a substantial compliance with the legislative direction contained in the provisions of sections 110 and 111 of the Revised Codes, as amended by Chapter 66, Laws of 1913, is necessary.

Same—Title—Limitation as to Number of Words.

11. *Held,* that the provision of section 110, Revised Codes, as amended that the title for an initiated measure shall not exceed one hundred words, has reference to the title as certified by the secre-

---

5. What constitutes "appropriation" of public money within constitutional provision relating thereto, see note in Ann. Cas. 1915A, 1240.

tary of state to the county clerks and not to the title as presented to him by the proponents of the measure, and that the title to Initiative Measure No. 19 meets the statutory requirement.

Same—Title on Ballot—Number of Words.

12. In determining whether the title of an initiated measure as it appears upon the ballot contains more than ten words contrary to the provision of section 111, Revised Codes, as amended, the words "For Initiative Measure No. ——" and "Against Initiative Measure No. ——" must be excluded from computation.

Same—Title on Ballot—Technicalities.

13. *Held,* that the fact that the title to Initiative Measure No. 19 on the ballot submitted at the election contained twelve words, if the figures "$5,000,000" be counted as three words, reading "five million dollars," instead of ten, as required by amended section 111, Revised Codes, does not invalidate it, in the absence of a showing that the electors were injured or deceived by the technical defect.

Same—Petitions—Submitting Arguments Against—Time for Filing.

14. Under section 112, Revised Codes, the time for placing arguments with the secretary of state for publication in opposition to an initiative measure runs from the date of the completion of the filing of the petitions for its submission, and not from the date of the governor's proclamation.

Same—Petitions—Insufficiency of Time for Filing Arguments in Opposition—Legislative Question.

15. The question whether sufficient time is allowed by the statute (sec. 112, *supra*) for filing arguments in opposition to a proposed initiative measure is one addressed to the legislative department rather than to the judiciary.

Same—Petitions may be Filed in Sections.

16. Under section 107, Revised Codes, petitions for the initiation of a measure may be filed in sections for convenience in handling.

Original application for injunction by the State, on the relation of James H. Bonner, against Jos. M. Dixon, Governor, and others, constituting the state board of examiners. Order to show cause set aside, and proceeding dismissed.

*Messrs. Murphy & Whitlock,* for Relator, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

1. Initiative Measure No. 19 is a law relating to appropriations of money and therefore not subject to the initiative under the provisions of Article V, section 1, of the Constitution. It is fundamental that in so far as the Constitution of this state offers no restriction, the law-making body has plenary legislative power (*In re Pomeroy,* 51 Mont. 119, 151 Pac. 333), and no distinction is to be made in this regard between a statute enacted by the people directly and one enacted by

the legislative assembly.   (*State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309.)

The authorities generally lay down the rule that an appropriation is the setting apart from the public revenue of a certain sum of money for a specific object in such manner that the executive officers of the government are authorized to use that money and no more, for that object and no other. (*Stratton* v. *Green,* 45 Cal. 149; *State* v. *Moore,* 50 Neb. 88, 61 Am. St. Rep. 538, 69 N. W. 373; *Menefee* v. *Askew,* 25 Okl. 623, 27 L. R. A. (n. s.) 537, 107 Pac. 159.)   This court in the case of *State* v. *Hickman,* 9 Mont. 370, 8 L. R. A. 403, 23 Pac. 740, approved the general definition of appropriation, holding in that case that an appropriation was in fact accomplished by the provision of the Constitution itself with reference to the salaries of certain state officers, and that no legislative Act was necessary.

It is not necessary to constitute a valid appropriation that the fund be then in the treasury.   As a matter of fact, it is very rarely the case that there are funds to meet an appropriation at the very time the appropriation is made.   (*People* v. *Chicago & N. W. R. Co.,* 249 Ill. 170, 94 N. E. 57; *Shattuck* v. *Kincaid,* 31 Or. 379, 49 Pac. 758.)   In this connection an appropriation is to be distinguished from a disbursement. (*Brown* v. *Honiss,* 74 N. J. L. 501, 68 Atl. 150.)   To constitute a valid appropriation it is not necessary that the amount be specifically and definitely fixed, but it is sufficient if a definite limit is fixed in the Act of appropriation which may not be exceeded.   (*State* v. *Holmes,* 19 N. D. 286, 123 N. W. 884.)   We have not found any case where the right to initiate a bond issue of any kind has been determined, but we do find a few cases relating to bond issues which shed light on the proper construction to be placed upon the term "appropriation."   (See *Carr* v. *State,* 127 Ind. 204, 22 Am. St. Rep. 624, 11 L. R. A. 370, 26 N. E. 778; *Village of Canandaigua* v. *Hayes,* 90 App. Div. 336, 85 N. Y. Supp. 488.)   In the case last above cited it is held in effect, that the voting of a bond

issue together with a tax to retire the same amounts to an appropriation of money. The following cases are also of value in passing upon this question: *Ristine* v. *State,* 20 Ind. 328; *Colbert* v. *State,* 86 Miss. 769, 39 South. 65; *McClure* v. *Nye,* 22 Cal. App. 248, 133 Pac. 1145; *State* v. *Clausen,* 85 Wash. 260, Ann. Cas. 1916B, 810, 148 Pac. 28; *Bartling* v. *Wait,* 96 Neb. 532, 148 N. W. 507. None of these cases refers to the initiation of a bond issue, but several of them are cases where the question was whether or not an issue could be referred to the people under a referendum. If a measure of this kind can be initiated, then under the same Article of the Constitution it may be referred if previously passed by the legislature. (See, also, *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755.)

2. The measure does not provide for the levy of a tax sufficient to pay the interest on and extinguish the principal of the debt authorized by the Act within the time limited by it for the payment thereof, as required by Article XIII, section 2, of the Constitution of Montana.

In the case of *State ex rel. Campbell* v. *Stewart, supra,* the court in considering the War Defense Act held that the Act which authorized the issuance of bonds not exceeding a certain sum did not create a debt within the meaning of the section referred to. It is true that in that case the court was considering an Act which came within the exception set out in section 12 of Article XII, relating to appropriations to assist in the defense of the United States in time of war, which makes the levy of a tax unnecessary in such case. But the court again discussed this question in the *Grain Elevator Bonds Case—State ex rel. Lyman* v. *Stewart,* 58 Mont. 1, 190 Pac. 129— where it was held that a provision for the levy of a tax very similar to the one contained in this measure was sufficient, and the court further held that the question of whether or not this levy was sufficient to meet the obligation was a legislative question with which the court had nothing to do. We believe,

therefore, that this question is concluded by the former decisions of this court.

3. The measure contains more than one subject in contravention of Article V, section 23, of the Constitution, and attempts to authorize the issuance of bonds for several purposes which are not related or connected. A valuable note collecting the decisions upon this point will be found in 61 Am. Dec., page 340. This rule has been held to apply to initiative measures as well as those passed by the legislature. (*People* v. *McBride,* 234 Ill. 146, 123 Am. St. Rep. 82, 14 Ann. Cas. 994, 84 N. E. 865; *State* v. *Richardson,* 48 Or. 309, 8 L. R. A. (n. s.) 362, 85 Pac. 225.) The bill in question provides for a bond issue and makes detailed provision for the use of the proceeds in behalf of various institutions created for different purposes, as will hereafter be pointed out. Our court has had before it a number of times this particular requirement of the Constitution, and the following cases are referred to: *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *Reid* v. *Lincoln County,* 46 Mont. 31, 125 Pac. 429; *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755; *State ex rel. Hay* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210.

It is a well-established rule that unrelated propositions to incur indebtedness or authorize the issuance of bonds cannot be properly submitted as a single question, but must be submitted separately. (*Blaine* v. *Hamilton,* 64 Wash. 353, 35 L. R. A. (n. s.) 577, 116 Pac. 1076.) In other words, there should be a unity of purpose, as said by this court in *Reid* v. *Lincoln County,* 46 Mont. 31, 125 Pac. 429. Other Montana cases establishing the doctrine are: *Evers* v. *Hudson, supra; State* v. *Ross,* 38 Mont. 319, 99 Pac. 1056; *State* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210.

The following cases from other jurisdictions lay down the same rule: Abbott on Public Securities, sec. 130; *Stern* v. *City of Fargo,* 18 N. D. 289, 26 L. R. A. (n. s.) 665, 122 N. W. 403; *City of Denver* v. *Hayes,* 28 Colo. 110, 63 Pac. 311; *Ross* v.

*Lipscomb,* 83 S. C. 136, 137 Am. St. Rep. 794, 65 S. E. 451; *Town of Woodlawn* v. *Cain,* 135 Ala. 369, 33 South. 149; *Gray* v. *Mount,* 45 Iowa, 591; *Rea* v. *City of La Fayette,* 130 Ga. 771, 61 S. E. 707; *Elyria Gas & Water Co.* v. *City of Elyria,* 57 Ohio St. 374, 49 N. E. 335; *Chase* v. *Gilbert,* 83 S. C. 546, 65 S. E. 735; *McBryde* v. *City of Montesano,* 7 Wash. 69, 34 Pac. 559; *Coleman* v. *Eutaw,* 157 Ala. 327, 47 South. 703; *Linn* v. *City of Omaha,* 76 Neb. 552, 107 N. W. 983; *City of Oakland* v. *Thompson,* 151 Cal. 572, 91 Pac. 387; *State ex rel. Horsley* v. *Carbon County,* 38 Utah, 563, 114 Pac. 522; *State* v. *Wilder,* 217 Mo. 261, 116 S. W. 1087.

4. The title of said initiative measure exceeds one hundred words in contravention of section 110, Revised Codes, as amended by Chapter 66 of the Laws of 1913, and that the title on the ballots contains more than ten words, in contravention of section 111, Revised Codes, as amended by the same Chapter.

If the court should conclude that either of these sections has been violated, then the question arises as to whether or not these provisions are merely directory provisions which may be entirely disregarded. (See *State ex rel.* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210.) The following cases bear upon the question of the importance to be attached to violations similar to the one referred to under this objection: *Murphy* v. *City of San Luis Obispo,* 119 Cal. 624, 39 L. R. A. 444, 51 Pac. 1085; Abbott on Public Securities, sec. 132; *Stem* v. *Bethlehem Borough,* 231 Pa. 461, 80 Atl. 984; *Dick* v. *Scarborough,* 73 S. C. 150, 53 S. E. 86; *State* v. *Millar,* 21 Okl. 448, 96 Pac. 747; *Wightman* v. *Village of Tecumseh,* 157 Mich. 326, 122 N. W. 122.

5. The petitions for initiative were not filed within the time required by law, and persons, committees or organizations opposing said Initiative Measure No. 19 were not permitted or given the opportunity to place with the secretary of state for distribution any pamphlets they might desire, as provided by section 112 of the Revised Codes.

There are a number of cases—none of them exactly in point—which illustrated the seriousness which the courts have attached to infractions of procedural requirements, and we cite the following as a matter of general information: *State* v. *Tooker*, 15 Mont. 8, 25 L. R. A. 560, 37 Pac. 840; *State* v. *Dalles City*, 72 Or. 337, Ann. Cas. 1916B, 855, 143 Pac. 1127, which cases involve the question of a failure to publish notice as required by Constitution or statute; *Wright* v. *City of McMinnville*, 59 Or. 397, 117 Pac. 298; *Staples* v. *City of Astoria*, 81 Or. 99, 158 Pac. 518; *Hildreth* v. *Taylor*, 117 Ark. 465, 175 S. W. 40, which involve the question of defective notice; *Ex parte Smith*, 49 Okl. 716, 154 Pac. 521, holding an initiative election void for failure to distribute pamphlets as required; *Day* v. *City of Salem*, 65 Or. 114, Ann. Cas. 1915A, 1011, 131 Pac. 1028, holding the omission of the warning clause from petition was not fatal; *State* v. *Howell*, 77 Wash. 651, 138 Pac. 286, relating to the time for filing.

In considering this contention the following considerations from the standpoint of the respondents must of course be kept in mind: 1. That no opposing argument of any kind was filed at any time; 2. That the question was not raised until after the election was held and that a majority of over twenty thousand had been returned in favor of the measure; 3. There is the principle established in this state by a long line of decisions that where it does not appear that the result would have been changed, and it does appear that the requirements of the law were substantially complied with, errors of this character may not be urged. (*Reid* v. *Lincoln County*, 46 Mont. 31, at 59, 125 Pac. 429; *Potter* v. *Furnish*, 46 Mont. 391, 128 Pac. 542; *State ex rel. Patterson* v. *Lentz*, 50 Mont. 322, 146 Pac. 932; *Wright* v. *Flynn*, 55 Mont. 61, 173 Pac. 421.)

Finally, there is the doctrine applying to measures passed by the legislature that the courts will not go behind the enrolled bill. This doctrine is fully discussed in a note, 40 L. R. A. (n. s.), page 1.

It may be urged that likewise the court in this case will not go behind the proclamation of the governor issued on December 6, immediately following the canvass of the votes, which proclamation declared the law to be in full force and effect from that day. However, in this state the case of *Palatine Ins. Co.* v. *Northern Pac. Ry. Co.*, 34 Mont. 268, 9 Ann. Cas. 579, 85 Pac. 1032, applies that doctrine so as not to prevent the court from going behind the enrolled bill and declaring an Act invalid for a failure of the journal to record the names of those voting, though the decision in that case has been strictly limited by the later decision of *State ex rel. Gregg* v. *Erickson*, 39 Mont. 280, 102 Pac. 336. If the court goes behind the proclamation of the governor declaring the Act passed, and further concludes that his proclamation issued after the filing of the petition is the official notice thereof, prior to which time those opposing the measure are not called upon to file opposing arguments, then clearly the opportunity of filing such arguments within the time prescribed was not afforded them, and the question for the court to determine is whether or not that is sufficient to invalidate the election in view of the result thereof.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. A. H. Angstman* and *Mr. Gael G. Wilson,* Assistant Attorneys General, for Respondents, submitted a brief; *Mr. Rankin,* and *Mr. H. H. Parsons, Amicus Curiae,* argued the cause orally.

Initiative Measure No. 19 does not relate to an appropriation of money, within the meaning of our Constitution. The word "appropriation," as used in the various sections of our Constitution, was evidently intended to be used in its strict sense of setting aside certain funds in the state treasury for a definite purpose and has application to the general fund of the state and not to a special fund to be raised by the issuance of bonds, as provided in the measure under consideration. In the case of *State* v. *Iverson*, 125 Minn. 67, 145 N. W. 607, the supreme court of Minnesota had under consideration the question as to

whether section 9 of Article IX of the state Constitution, which provides that: "No money shall ever be paid out of the treasury of this state, except in pursuance of an appropriation by law," prevented the payment of a warrant upon the state treasury without an appropriation, under a law which provided for a tax upon the gross earnings of railroads and which provided for the apportionment of the said taxes by the state tax commission to the different municipalities in accordance with the earnings of the railroad company in each. The court held that the constitutional provision above quoted did not refer to the money thus raised, because the money was not part of the general revenue fund of the state, and that the constitutional provisions had application merely to that fund. (See, also, *State* v. *Searle*, 77 Neb. 155, 108 N. W. 1119, 109 N. W. 770; *Commonwealth* v. *Powell*, 249 Pa. 144, 94 Atl. 746; *State ex rel. Ridgell* v. *Hall*, 99 Neb. 89, 155 N. W. 228, 156 N. W. 16; *Bartling* v. *Wait*, 96 Neb. 532, 148 N. W. 507.)

The tax imposed by the Act is sufficient to pay the interest and principal within the time required by the Constitution. (See *State ex rel. Lyman* v. *Stewart*, 58 Mont. 1, 190 Pac. 129; *Morton, Bliss & Co.* v. *Comptroller-General of South Carolina (Hoge)*, 4 S. C. 430; *Epping* v. *Columbus*, 117 Ga. 263, 43 S. E. 803; *Howland* v. *Board of Supervisors*, 109 Cal. 152, 41 Pac. 864; *Bassett* v. *City of El Paso*, 88 Tex. 168, 30 S. W. 893; *State* v. *Allen*, 183 Mo. 283, 82 S. W. 103; 1 Dillon on Municipal Corporations, p. 421.)

The measure in question relates to but one general subject and does not violate the terms of section 23 of Article V of the Constitution. By numerous decisions of this court it has been held that parts of legislation which have a natural connection and can reasonably be said to relate directly or indirectly to one general and legitimate subject of legislation can be united in an Act without contravening the constitutional provision in question. (*Evers* v. *Hudson*, 36 Mont. 135, 92 Pac. 462; *State* v. *Ross*, 38 Mont. 319, 99 Pac. 1056.)

In the case of *Reid* v. *Lincoln County,* 46 Mont. 31, 125 Pac. 429, this court entered into an exhaustive discussion of this question and quoted with approval the language of various courts of other states, and among others, quoted from the case of *State ex rel. Horsley* v. *Carbon County,* 38 Utah, 563, 114 Pac. 522, which held that a proposition to issue $30,000 county bonds, $25,000 to build bridges and $5,000 to build and repair roads, was for one general object, and that they did not state two purposes required to be separately submitted. (*Clark* v. *City of Los Angeles,* 160 Cal. 31, 116 Pac. 722.)

The title of the bill as certified to the county clerks by the secretary of state complied with the legal requirements.

Section 110, Revised Codes, as amended by Chapter 66, Laws of 1913, does not require the title of the bill itself to be limited to one hundred words, but merely requires the secretary of state to use for each measure a title, furnished by the organization presenting the measure, which does not exceed 100 words. The title used by the secretary of state does not exceed one hundred words. There is a serious question likewise whether the legislature may limit the number of words to be used in the title when no such limitation is prescribed by the Constitution.

It is likewise contended that the measure violates the provisions of section 111 of the Revised Codes as amended by Chapter 66 of the 1913 Session Laws, which provides in part that "no title on a ballot shall contain more than ten words, which shall be descriptive of the measure proposed." Certainly it was not the intention of the legislature to declare a bill void which did not measure up to a strict compliance with the statutes. Section 1 of Article V of the Constitution places no limitations upon the right of the people to initiate laws, save the exceptions therein named. The Constitution having made certain exceptions as regards the right of the people to initiate certain measures, and having prescribed certain requirements which must be complied with before the initiative may be exercised, those restrictions and limitations are exclusive, and the

legislature cannot add to such requirements. (*State* v. *Barnes,* 24 Fla. 29, 3 South. 433; *Page* v. *Allen,* 58 Pa. St. 338, 98 Am. Dec. 272.)

Moreover, the limitations to ten and one hundred words are merely statutory direction in aid of the constitutional provision for initiating laws, and literal compliance will not be required where no showing of injury or loss of right is made to appear, and where a requirement of literal compliance would defeat the very object of the Constitution instead of aiding it. (See *State ex rel. Hay* v. *Alderson,* 49 Mont. 387, 413, 414, Ann. Cas. 1916B, 39, 142 Pac. 210.)

The case of *Thomas* v. *Kent, Circuit Judge,* 116 Mich. 106, 74 N. W. 381, was one of *mandamus* to compel the circuit judge to dissolve an injunction restraining the submission to electors of the question of borrowing money to erect a pauper insane asylum. It was admitted that the ballots were not literally in accord with the form prescribed by statute, but the court said that they gave the voter information as to the nature of the propositions which the prescribed forms would not do, and held the statute directory only. To the same general effect is the case of *State ex rel. Edwards* v. *Millar,* 21 Okl. 448, 96 Pac. 747; *McClelland* v. *Erwin,* 16 Okl. 612, 86 Pac. 283; *Merrill* v. *Reed,* 75 Conn. 12, 52 Atl. 409.

The completed petitions for the initiative were filed within the time required by law.

The further objection is made to the bill in question upon the ground that the initiative petitions were not filed with the secretary of state within the time required by section 112 of the Codes of 1907, and that any person or organization desiring to oppose the measure, did not have opportunity to submit pamphlets for circulation. If section 112 can be construed as changing the time specified in the Constitution, still this court will not declare the measure invalid even if section 112 were not substantially complied with, in the absence of a showing that some person, committee or organization was prevented from distributing pamphlets by reason of a noncompliance with

this section, which they otherwise would have done. In other words, some showing must be made that some person, committee or organization was deprived of a substantial right, and thus a showing must be made that some person, committee or organization desired to file pamphlets opposing the measure, but were prevented from doing so on account of failure to comply with the provisions of the statute in question. The bill will not be declared invalid upon technical grounds not appearing to have affected the substantial rights of anyone. There is no showing, moreover, that any argument opposing the measure would have changed the result of the election, and before the measure will be held to be void, such a showing must be made. (*Reid* v. *Lincoln County,* 46 Mont. 31, 58, 125 Pac. 429; *Potter* v. *Furnish,* 46 Mont. 391, 128 Pac. 542; *State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 146 Pac. 932; *Wright* v. *Flynn,* 55 Mont. 61, 173 Pac. 431; *Leary* v. *Young,* 55 Mont. 275, 176 Pac. 36; *State* v. *Long,* 21 Mont. 26, 52 Pac. 645.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an original application for an injunction to enjoin the issuance and sale of bonds of the state of Montana proposed to be issued by the defendants under authority contained in Initiative Measure No. 19, passed by the people at the general election held on November 2, 1920, "for the construction, repair and equipment of buildings at the State University, Missoula; College of Agriculture and Mechanic Arts, Bozeman; School of Mines, Butte; Normal College, Dillon; Orphans' Home, Twin Bridges; School of Deaf and Blind, Boulder; Industrial School, Miles City; Vocational School for Girls, Helena"—all under the control of the state board of education. Hearing was had in response to an order to show cause why an injunction should not be issued. Defendants have appeared by general demurrer, and upon the facts set out in the complaint the questions arising must be determined.

The facts presented, in so far as material, relating to the passage of said measure and the proceedings had since its enact-

ment, are as follows: Between March 13, 1920, and July 2, 1920, there was filed in the office of the secretary of state of the state of Montana a petition for an initiative law, which petition was filed in sections, the first and last sections being filed, respectively, on the two dates given, and the last being filed four months before the election at which the measure was to be voted upon. Upon July 9, 1920, the secretary of state notified the governor of the state in writing of the filing of said petitions for the initiative measure, and the governor, on July 10, issued his proclamation as required by section 109, Revised Codes. The secretary of state, prior to the first Monday in August, 1920, caused to be printed in pamphlet form a true copy of the title and text of said initiative measure, with the number and form in which the question would be printed on a separate ballot. The pamphlet so published also included affirmative arguments furnished by the committee which filed said petition, which affirmative arguments were placed with the secretary of state on or before the first Monday of June, 1920. No person, committee or organization opposing said measure placed with the secretary of state for distribution any pamphlet or printed arguments of any kind at any time. The secretary of state, before the second Monday in August, 1920, distributed to each county clerk in the state a sufficient number of said pamphlets to furnish one copy to every voter in his county. At the time the secretary of state furnished to the county clerks of the several counties certified copies of the names of the candidates for office, he also furnished to said county clerks, as required by section 110 of the Revised Codes, a certified copy of the title and number of said initiative measure to be voted upon at the ensuing general election, using for such measure the title designated for that purpose by the committee which presented and filed the petition for such initiative measure. The title so designated and set out in said certificate contained less than one hundred words, *viz.*, ninety-two words, but the title appearing upon the petitions as filed contained more than one hundred words, *viz.*, 208 words, and the title on

the ballot descriptive of said measure contained ten words, counting "$5,000,000" as one word, or twelve words if "$5,000,000" shall be construed as three words. Initiative Measure No. 19 was voted upon at the general election held on November 2, 1920, and the official canvass of the votes cast at the election for and against said measure disclosed that 90,444 votes had been cast for the measure and 66,237 against it; and after such canvass the governor regularly issued his proclamation on December 6, 1920, declaring said measure to be in full force and effect from and after the date of said proclamation. Subsequently the state board of education, in appropriate manner, determined the necessity for the issuance of $1,750,000 of bonds under authority of this law and made request of the state board of examiners to issue and sell the same, and the state board of examiners has passed an appropriate resolution authorizing the issuance and sale thereof.

Initiative Measure No. 19, the validity of which is called in question, as filed with the secretary of state, is not a model draft of an initiative measure, in our opinion. It contains eight sections, providing, in substance, as follows:

The first section authorizes and empowers the state board of examiners of the state of Montana to issue bonds in the name of the state, in an amount not exceeding $5,000,000 in excess of the constitutional limitation of indebtedness and over and above any bond indebtedness theretofore incurred, the money derived from the sale of said bonds to be used for the purpose of constructing, repairing and equipping necessary buildings at the several educational institutions of the state of Montana, under the control of the state board of education, which are named and include those which constitute the University of Montana, and also the State Orphans' Home at Twin Bridges, the Montana School for the Deaf and Blind at Boulder, the Montana State Industrial School at Miles City, and the State Vocational School for girls at Helena.

Section 2 provides that the bonds shall be issued at such times and in such amounts as the state board of examiners may

determine, none of the bonds to be issued or sold, however, until the state board of education shall have first determined the necessity therefor and have requested the state board of examiners to issue and sell the same.

Section 3 leaves the denomination of the bonds to the determination of the state board of examiners and provides that they shall bear date as of the date of issuance, that they shall be due twenty years from their date, redeemable at any time after ten years, and bear interest at the rate of five and one-half per cent per annum, payable semi-annually.

Section 4 relates to the form of the bonds, provides for signature by the state board of examiners and the affixing of the seal of the state, and makes provision for interest coupons.

Section 5 authorizes the state board of examiners to dispose of the bonds in such manner as they deem for the best interest of the state, provided that no bonds shall be sold for less than par.

Section 6 provides that all money derived from the sale of the bonds shall be paid into the state treasury and constitute a special fund for the construction, repair, and equipment of necessary buildings at the institutions named in the first section, and shall be expended only for such purpose and disbursed by the state treasurer on warrants properly drawn against such fund. This section also provides for the apportionment of the money derived from the sale of the bonds as between those institutions comprising the University of Montana and the other institutions named, providing that no more than $3,750,000 shall be expended at the University institutions, and not more than $1,250,000 at the other institutions.

Section 7 provides for an annual levy upon all property in the state of Montana subject to taxation, of a tax of 10/12 of a mill, which tax, when collected by the county treasurers of the several counties, shall be paid into the state treasury and placed in the "State Educational Bond Sinking and Interest Fund," which fund shall be used exclusively for the

payment of the principal and the interest accruing on the bonds.

Section 8 merely provides that the Act goes into effect from and after its approval and proclamation.

Five grounds are urged in the complaint why the injunction should be granted, as follows:

(1) That said Initiative Measure No. 19 is a law relating to appropriations of money and therefore not subject to the initiative under the provisions of Article V, section 1, of the Constitution.

(2) That said Initiative Measure No. 19 does not provide for the levy of a tax sufficient to pay the interest and extinguish the principal of the debt authorized by the Act within the time limited by it for the payment thereof, as required by Article XIII, section 2, of the Constitution.

(3) That said initiative measure contains more than one subject, in contravention of Article V, section 23, of the Constitution, and attempts to authorize the issuance of bonds for several purposes which are not related or connected.

(4) That the title of said initiative measure exceeds one hundred words, in contravention of Section 110, Revised Codes, as amended by Chapter 66 of the Laws of 1913, and that the title on the ballot contains more than ten words, in contravention of section 111, Revised Codes, as amended by Chapter 66 of the Laws of 1913.

(5) That the petitions for said initiative measure were not filed within the time required by law, and persons, committees or organizations opposing the measure were not permitted or given the opportunity to place with the secretary of state for distribution any pamphlets they might desire, as provided by section 112 of the Revised Codes.

Before entering upon a discussion of the questions presented, we take occasion to compliment counsel upon the manner in which the case has been briefed and presented. Heretofore we have indulged in criticism of counsel for failure to submit briefs of aid to the court (*Wing* v. *Brasher, ante,* p. 10, 194 Pac.

1106), but briefs of the character submitted in this case are of real assistance to the court, are appreciated, and minimize our labors.

The law is settled that the constitutionality of a legislative [1] enactment is *prima facie* presumed, and every intendment is in favor of upholding it, unless it appears unconstitutional beyond a reasonable doubt. (*Northwestern Mut. Life Ins. Co.* v. *Lewis & Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982; *In re O'Brien,* 29 Mont. 530, 1 Ann. Cas. 373, 75 Pac. 196; *Spratt* v. *Helena P. & T. Co.,* 37 Mont. 60, 94 Pac. 631; *State ex rel. Payton* v. *Cunningham,* 39 Mont. 197, 18 Ann. Cas. 705, 103 Pac. 497; *State ex rel. Hay* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210; *State ex rel. Fenn* v. *Keating,* 53 Mont. 371, 163 Pac. 1156; *State ex rel. Cryderman* v. *Wienrich,* 54 Mont. 390, 170 Pac. 942; *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755.)

Having before us the rule above stated, favoring the constitutionality of a law enacted, unless it is clearly a nullity in consequence of constitutional provisions or limitations, we now venture a discussion of the several objections raised to Initiative Measure No. 19.

The first objection to the Act is that it violates the provisions of section 1, Article V, of the Constitution, which section reads in part as follows: "The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives; but the people reserve to themselves power to propose laws, and to enact or reject the same at the polls except as to laws relating to appropriations of money, and except as to laws for the submission of constitutional amendments, and except as to local and special laws, as enumerated in Article V, section 26, of this Constitution, independent of the legislative assembly; and also reserve power at their own option, to approve or reject at the polls, any Act of the legislative assembly, except as to laws necessary for the immediate preservation of the public peace, health or safety, and except as to laws relating to appropriations of money, and

except as to laws for the submission of constitutional amendments, and except as to local or special laws, as enumerated in Article V, section 26, of this Constitution. The first power reserved by the people is the initiative, * * * and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the secretary of state, not less than four months before the election at which they are to be voted upon.''

This constitutional provision is clear and unambiguous, and [2, 3] inquiry is made as to whether it has any application to the Act under consideration. Its provisions are mandatory (sec. 29, Art. III). The declarations of the Constitution with reference to the subject upon which it assumes to speak are conclusive upon the legislature and prevent the enactment of any law which has for its purpose the extinction or limitation of the powers conferred by the constitutional provisions. (*Northwestern Mut. Life Ins. Co.* v. *Lewis & Clark County, supra.*) The people, in the exercise of their legislative prerogatives, are subject to the same constitutional limitations as are applicable to the legislative assembly.

It is settled that in so far as the Constitution of the state [4] offers no restriction, the law-making body has plenary legislative power (*In re Pomeroy*, 51 Mont. 119, 151 Pac. 333), and no distinction in this regard is made of a statute enacted by the people directly, and one enacted by the legislative assembly (*State ex rel. Evans* v. *Stewart*, 53 Mont. 18, 161 Pac. 309; *State ex rel. Goodman* v. *Stewart*, 57 Mont. 144, 187 Pac. 641).

Generally, the word ''appropriation,'' as used throughout [5] our Constitution, has reference exclusively to the general fund, or at any rate a fund already existing or for which provision has been made, as will be noted by an examination of the several constitutional provisions wherein the term is used. Article V, section 21, reads thus: ''No bill for the appropriation of money, except for the expenses of the government, shall be introduced within ten days of the close of the session, except

by unanimous consent of the house in which it is sought to be introduced.''

Article V, section 23, reads thus: ''No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title. * * * ''

Article V, section 33, reads thus: ''The general appropriation bills shall embrace nothing but appropriations for the ordinary expenses of the legislative, executive and judicial departments of the state, interest on the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.''

Article V, section 34, reads thus: ''No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof, except interest on the public debt.''

Article V, section 35, reads thus: ''No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, nor to any denominational or sectarian institution or association.''

Article VII, section 13, provides that—The governor ''shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts approved shall become a law, and the item or items disapproved shall be void. * * * ''

Article X, section 4, reads thus: ''The legislative assembly shall make no appropriations or expenditures for capitol buildings or grounds until the seat of government shall have been permanently located, as herein provided.''

Article XII, section 10, is particularly enlightening with reference to the manner in which the word ''appropriation'' is used throughout the Constitution. It reads thus: ''All taxes levied for state purposes shall be paid into the state treasury,

and no money shall be drawn from the treasury but in pursuance of specific appropriations made by law."

Article XII, section 12, reads thus: "No appropriation shall be made or any expenditures authorized by the legislative assembly whereby the expenditures of the state during any fiscal year shall exceed the total tax then provided for by law, and applicable to such appropriation or expenditure, unless the legislative assembly making such appropriation shall provide for levying a sufficient tax, not exceeding the rate allowed in section nine (9) of this Article, to pay such appropriations or expenditures within such fiscal year. This provision shall not apply to appropriations or expenditures to suppress insurrection, defend the state, or assist in defending the United States in time of war. No appropriation of public moneys shall be made for a longer term than two years."

Article XIV, section 3, reads as follows: "The legislative assembly shall provide by law for maintaining the militia, by appropriations from the treasury of the state."

The right to initiate or refer laws relating to "appropria-
[6] tions" has not been reserved to the people under the plain language of section 1, Article V of the Constitution, and, in fact, by the express terms thereof is excluded from either initiative or referendum laws. "Appropriation" means an authority from the law-making body in legal form to apply sums of money out of that which may be in the treasury in a given year, to specified objects or demands against the state. (3 Cyc. 565. See, also, 4 Corpus Juris, 1460.) It means the setting apart of a portion of the public funds for a public purpose, and there must be money in the fund applicable to the designated purpose to constitute an appropriation. (*State ex rel. Rotwitt* v. *Hickman,* 9 Mont. 370, 8 L. R. A. 403, 23 Pac. 740; *State ex rel. Journal Pub. Co.* v. *Kenney,* 9 Mont. 389, 24 Pac. 96; *State ex rel. Journal Pub. Co.* v. *Kenney,* 10 Mont. 485, 26 Pac. 197; *Felton* v. *Hamilton County* (Tenn.), 97 Fed. 823, 38 C. C. A. 482; *Menefee* v. *Askew,* 25 Okl. 623, 27 L. R. A. (n. s.) 537, 107 Pac. 159; *Shattuck* v. *Kincaid,* 31 Or. 379, 49 Pac. 758;

*Pickle* v. *Finley,* 91 Tex. 484, 44 S. W. 480; *United States* v. *Fisher,* 109 U. S. 143, 27 L. Ed. 885, 3 Sup. Ct. Rep. 154 [see, also, Rose's U. S. Notes]; *State* v. *La Grave,* 23 Nev. 25, 62 Am. St. Rep. 764, 41 Pac. 1075.)

"Appropriation," as used in section 1 of Article V of the Constitution, unquestionably refers to moneys in the general fund, or at most a specific designated fund *in esse,* or for which provision has been made, as hereinafter pointed out, as is indicated by the very language used prohibiting the initiative or referendum of such measures for the very apparent reason that an initiative measure might be proposed and passed by the people without sufficient knowledge of the necessity therefor or the amount of funds available; and a referendum of any such measure might easily cripple or destroy the administration of governmental affairs even to the extent of requiring the legislative, executive or judicial branches of the government, or all of them, to cease to function. The restriction in this constitutional provision is clearly directed to the exclusion of appropriation measures from the operation of the initiative and referendum with which the legislative body and not the general public are familiar. (*Bartling* v. *Wait,* 96 Neb. 532, 148 N. W. 507.) "The obvious reason for the exception of appropriation bills and bills for the codification and general revision of the laws, is that the first are necessary for the maintenance of the government, and hence their validity ought not to be open to question for informality; and the latter are extraordinary in their character and both the members of the legislative body and the public are presumed to know what is being done. Furthermore, it would be impracticable to formulate a title which would cover every subject embraced in such a bill." (*State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 151, 140 Pac. 734.)

It is not necessary, to constitute a valid appropriation, that the fund be then in the treasury. As a matter of fact, it is very rarely the case that there are funds to meet an appropriation at the very time that the appropriation is made. As has

been very aptly said in *People* v. *Chicago & Northwestern R. Co.*, 249 Ill. 170, 94 N. E. 57: "It is not essential to the validity of the appropriation that funds to meet the same  *  *  *  be, at the time, in the treasury. As a matter of fact, there are seldom  *  *  *  the necessary funds to meet the several amounts appropriated for any given year. An appropriation may legally be made of revenue to accrue in the future. (*People* v. *Brooks*, 16 Cal. 11.)"

The general rule is that no appropriation can be made until the fund is at the time *in esse* or provision has been made for raising the same. (*People* v. *Brooks, supra; Shattuck* v. *Kincaid, supra;* 4 Ency. L. & P. 1227; *People* v. *Chicago etc. Ry. Co.*, 249 Ill. 170, 94 N. E. 57.) Here, the Act providing for the raising of the fund is contemporaneous with provision for its disposition, so that, unless there was a fund in the state treasury or one provided for to be placed in the treasury and drawn upon in the future, there is no "appropriation." As used in this constitutional provision, in our opinion, it relates to the general, or at least to a special, fund of the state, rather than such as may be received in the treasury and credited to a particular fund from the sale of an authorized bond issue. (See *State* v. *Iverson*, 125 Minn. 67, 145 N. W. 607; *Commonwealth* v. *Powell*, 249 Pa. 144, 94 Atl. 746; *State* v. *Searle*, 77 Neb. 155, 108 N. W. 1119, 109 N. W. 770.) The word "appropriations" does not properly describe a proposed bond issue extending over a period of years. (*Village of Canandaigua* v. *Hayes*, 90 App. Div. 336, 85 N. Y. Supp. 488; *Colbert* v. *State*, 86 Miss. 769, 36 South. 65.) The word "appropriations," as used in the Constitution, means the setting apart of money in the state treasury for a specific purpose after it has been placed therein or duly provided for. In *State ex rel. Bennett* v. *Board*, 40 Mont. 59, 104 Pac. 1055, this court, speaking through Mr. Chief Justice Brantly, said: "Section 12, Article XII, *supra*, construed together with section 6, Article V, section 11, Article VII, and section 1, Article XII, necessarily requires the conclusion that provision must be made for reve-

nue for the two years intervening between sessions of the
legislature, and also that appropriations for the different needs
of the government be made at the same time. Only an un-
usual and anomalous condition could justify the adoption of
any other course."

The Act in question is self-executing, the money derived
[7]  from the bonds is to be placed in a specific fund desig-
nated as the "State Educational Bond Sinking and Interest
Fund," and no appropriation of such fund is requisite as a
condition precedent to its being paid out on warrant.

We are of the opinion that there is no merit in the first
contention made by the plaintiff, as it would necessitate a
distorted construction of language to hold that money raised
by virtue of a bond issue constitutes an "appropriation"
within the meaning of this constitutional provision, although
the measure places limitation upon the amount which may
be expended for any specific purpose. Were this objection
not so seriously argued by counsel, it would be by us dismissed
with far less extended consideration.

The second objection raised to the Act is that it violates sec-
tion 2, Article XIII, of the Constitution. This section pro-
[8]  vides that any law creating a debt shall provide for the
levy of a tax sufficient to pay the interest on, and extinguish
the principal of, the debt within the time limited by such law
for the payment thereof. Initiative Measure 19 carries, in
section 7, a provision for the levy of a tax. It is indefinite as
to the time during which it shall be operative and the tax
levy is limited. However, it must be remembered that "The
legislative assembly shall not in any manner create any debt
except by law which shall be irrepealable until the indebted-
ness therein provided or shall have been fully paid or dis-
charged." (Sec. 2, Art. XIII, Const.) By section 3, the
denomination of the bonds, date of issuance, and date of re-
demption are left to the judgment and discretion of the state
board of examiners, and direction is made that they shall be
due twenty years from their date, redeemable at any time

after ten years and bear interest at the rate of 5½ per cent per annum, payable semi-annually. There is no merit to this objection. It is purely a legislative question, and, in our opinion, is foreclosed by former decisions of this court. (*Godbe* v. *McCormick,* 1 Mont. 105; *Jay* v. *School District,* 24 Mont. 219, 61 Pac. 250; *In re Pomeroy,* 51 Mont. 119, 151 Pac. 333; *State ex rel. Lyman* v. *Stewart,* 58 Mont. 1, 190 Pac. 129; *State* v. *Holland,* 37 Mont. 393, 96 Pac. 719; *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755; *Hill* v. *Rae,* 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826; 6 R. C. L. 107.) Should the amount of tax authorized prove inadequate, the legislature only has the power to increase the levy. This can readily be accomplished by amendment of the law when it satisfactorily appears to the legislative assembly that the amount of tax levy is inadequate for the retirement of the bonds. In *State ex rel. Lyman* v. *Stewart,* 58 Mont. 1, 190 Pac. 129, this court said: "Whether the levy of one-half mill on the dollar is sufficient to meet the obligation is a legislative question with which the court has nothing to do. (*State* v. *Holland,* 37 Mont. 393, 96 Pac. 719.) No showing is made that it will not be sufficient, and for the purposes of this hearing it must be presumed that it will be ample." (See, also, *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755.)

The third ground of attack is that the Act contains more **[9]** than one subject and attempts to authorize the issuance of bonds for several purposes which are not connected, in contravention of section 23, Article V, of the Constitution. This section of the Constitution reads as follows: "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed."

The Act authorizes the issuance of bonds for the purpose of constructing, repairing and equipping necessary buildings at the several institutions mentioned in the Act. Section 648 of the Revised Codes, as amended by Chapter 76 of the Laws of 1913, provides that the state board of education shall have general supervision and control of the University of Montana, the Montana State Normal College, the State College of Agriculture and Mechanic Arts, the State Orphans' Home, the Montana School of Mines, the Montana School of the Deaf and Blind, and the Montana State Industrial School. Chapter 101 of the Laws of 1919, establishing the State Vocational School for Girls at Helena, places it under the control and supervision of the state board of education, so that all of the institutions affected by the Act are under the control and supervision of the state board of education, and the law in question is designed to provide revenues by means of a state bond issue, for constructing, repairing and equipping necessary buildings at the several institutions named. It is clear to us that the Act does not contravene this provision of the Constitution, as such law manifestly embraces but a single purpose, *viz.*, the issuance and sale of state bonds whereby funds may be raised and made available for buildings and betterments of certain state institutions named, under the control of the state board of education. In *State* v. *Ross*, 38 Mont. 319, 99 Pac. 1056, this court, speaking through Mr. Justice Holloway, said: "In *Evers* v. *Hudson*, 36 Mont. 135, 92 Pac. 462, this court, in considering a like objection to a statute, said: 'The object of the constitutional provision now under consideration is not to embarrass honest legislation, but to prevent the vicious practice, which prevailed in states which did not have such inhibitions, of joining in one Act incongruous and unrelated matters. The rule of interpretation now quite generally adopted is that, if all parts of the statute have a natural connection and can reasonably be said to relate, directly or indirectly, to one general and legitimate subject of legislation, the Act is not open to the charge that it violates

this constitutional provision; and this is true no matter how extensively or minutely it deals with the details looking to the accomplishment of the main legislative purpose. (26 Am. & Eng. Ency. of Law, 2d ed., 575.) Or, stating the converse of the proposition, it may be said that if, after giving the Act the benefit of all reasonable doubts, it is apparent that two or more independent and incongruous subjects are embraced in its provisions, the Act will be held to transgress the constitutional provision, and to be void by reason thereof.' The title of an Act may be as comprehensive as the legislative judgment dictates, provided only that it looks to but a single purpose or object, and the Act may include every matter germane to, and in furtherance of, that purpose or object." The purpose of this section of the Constitution is as stated by Mr. Chief Justice Brantly, in *State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 140 Pac. 732: "First, to prevent hodge-podge or 'log-rolling' legislation; second to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire. (Cooley on Constitutional Limitations, 205.)" (See, also, *State* v. *McKinney,* 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095.; *Jobb* v. *County of Meagher,* 20 Mont. 424, 51 Pac. 1034; and *Russell* v. *Chicago etc. Ry. Co.,* 37 Mont. 10, 94 Pac. 488, 501.)

In *State ex rel. Hay* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210, this court stated the true rule applicable, in the following language: "We have repeatedly held that the unity required by this section is served notwithstanding the existence of many provisions in an Act, where such provisions are germane to the general subject expressed."

(See, also, *Reid* v. *Lincoln County*, 46 Mont. 31, 125 Pac. 429.)
In the title of the Act in question there is but one subject,
namely, the issuance and sale of bonds by the state for build-
ings and betterments of certain state institutions. The objec-
tion is without merit.

The fourth ground of attack is that (1) the title of the
[10] measure exceeds one hundred words, and (2) the legend
on the ballot exceeds ten words, in violation of sections 110
and 111 of the Revised Codes, as amended by Chapter 66,
Laws of 1913. The Constitution provides that "In submitting
the same [initiative and referendum measures] to the people,
he [the secretary of state] and all other officers, shall be
guided by the general laws and the Act submitting this amend-
ment, until legislation shall be especially provided therefor."
(Sec. 1, Art. V.) Under this constitutional provision, sections
110 and 111 of the Revised Codes, as amended by Chapter 66
of the Laws of 1913, are controlling as · to the administra-
tive feature in the submission of such questions to the people,
and a substantial compliance with such legislative directions
is necessary. Upon examination of the original petition for
[11] the initiative of the Act in question, copy of which is
attached to the complaint as an exhibit, it appears that the title
of the bill is in excess of one hundred words and comprises a
title of 208 words; but it also appears from the exhibit at-
tached to the complaint, that the title as certified to the several
county clerks of the state, contains less than one hundred
words, *i. e.,* ninety-two words. Section 110, as amended by
Chapter 66, Laws of 1913, provides: "The secretary of state,
at the same time that he furnishes to the county clerk of the
several counties certified copies of the names of the candidates
for office, shall also furnish the said county clerks his certified
copy of the titles and numbers of the various measures to be
voted upon at the ensuing general or special election, *and he
shall use for each measure, a title designated for that purpose
by the legislative assembly, committee, or organization present-
ing and filing with him the Act, or petition for the initiative*

*or the referendum or in the petition or Act; provided, that
such title shall in no case exceed one hundred words,* and shall
not resemble any such title previously filed for any measure to
be submitted at that election which shall be descriptive of said
measure, and he shall number such measures; and such title
shall be printed on a separate official ballot in the order in
which the Acts referred by the legislative assembly and peti-
tioned by the people shall be filed in his office.''

There is no merit to the first phase of this objection, as this
section of the statute does not require the title of the bill it-
self, as filed for the submission of an initiative measure to vote
of the people, to be limited to one hundred words; it merely
requires the secretary of state, in certifying such measures to
the county clerks of the several counties, to use for each meas-
ure a title furnished by the organization presenting the
measure, not exceeding one hundred words. The title of the
Act proposed, as filed with the secretary of state, may, as the
title of the Act in question does, contain a title in the nature
of a table of contents in excess of one hundred words; but that
is not the title referred to in the statute. This law places such
word limitation only upon the title as certified by the secretary
of state. The apparent reason of this rule is so as to prevent
lengthy and cumbersome titles confusing to the voters. The
title as certified and printed upon the official ballot is less in
number of words than the limitation, as to such number, pre-
scribed by the statute.

As to the second feature of this objection to the Act in
[12] question, it is provided by section 111 of the Revised
Codes, *supra*, that: ''No title on a ballot shall contain more
than ten words, which shall be descriptive of the measure pro-
posed.'' The legend as certified to the several county clerks
and as used on the ballot contains ten words only, excluding
from computation the words ''For Initiative Measure No.
19,'' and counting ''$5,000,000'' as one word. The form of
ballot as certified is as follows:

"☐ For Initiative Measure No. 19.   Providing for $5,000,000
Bonds for Buildings at State Educational Institutions.

"☐ Against Initiative Measure No. 19. Providing for
$5,000,000 Bonds for Buildings at State Educational In-
stitutions."

The contention of the plaintiff is without merit, for there has
been a substantial compliance with statutory requirements in
the submission of the question to the electors.   The words "For
Initiative Measure No. 19," and "Against Initiative Measure
No. 19," are properly excluded from computation of the num-
ber of words in the legend on the ballot, and the only
[13]   remaining question is whether "$5,000,000" shall be com-
puted as one word or three words.   If but one word, the num-
ber of words contained in the legend complies with the
statutory requirements and the legend on the ballot contains
exactly ten words, but if it is considered as three words (five
million dollars) rather than one, then the number of words in
the legend is twelve, or two in excess of the number limited in
the administrative statute guiding the secretary of state in the
certification of the form of the ballot.   No person could possi-
bly have been misled, whether "$5,000,000" is properly to be
computed as comprising three words or but one.   The vote for
the bonds has been carried by a substantial majority, and we
do not deem it within the province of this court to nullify a
law upon any such hair-splitting technicality.   It was the
plain duty of the secretary of state, in making certificate of the
form of ballot, to comply with the administrative statute gov-
erning the performance of his duty in making certification
(sec. 111, Rev. Codes, as amended by Chapter 66, Laws of
1913), but the people cannot be permitted to suffer defeat of
their will, expressed in the election, merely as a result of de-
bate or quibble whether "$5,000,000" comprises one word or
three.   There is nothing to indicate that the people have in
any manner been injured or deceived, even though technically
it be considered that there were two or more words used in the
legend on the ballot than authorized.   We quote with approval

and adopt the language used by Mr. Chief Justice Brantly, in *State ex rel. Patterson* v. *Lentz*, 50 Mont. 322, 146 Pac. 932, where, in speaking for the court, he said: "No informality in the election will suffice to defeat their will [speaking of the people], as expressed by their votes, if in fact it appears that they had actual notice and did indicate their choice. * * * The weight of authority is in favor of the rule that if it appears from the evidence that the people had actual notice, that none of them have been misled, so that they refrained from voting on that account, and that they voted generally, even though it is apparent that many refrained from voting because of their indifference as to the result, the election should be upheld." This case last cited, of course, had reference to notice of election rather than the form of the ballot, but in our opinion the same principles are involved.

Further objection is made upon the ground that the **[14]** legislative petitions were not filed with the secretary of state within the time required by section 112 of the Revised Codes, and that any person or organization desiring to oppose the measure did not have opportunity to submit pamphlets for circulation.

The complaint shows on its face that the last of the petitions were filed on July 2, 1920. Section 112 in question provides as follows: "The secretary of state shall, not later than the first Monday of the third month next before any general or special election, at which any proposed law is to be submitted to the people, cause to be printed a true copy of the title and text of each measure to be submitted, with the number and form in which the question will be printed on a separate official ballot. * * * The persons, committees or duly authorized officers of any organization filing any petition for the initiative, but no other person or organization, shall have the right to place with the secretary of state for distribution, any pamphlets advocating such measure, not later than the first Monday of the fifth month before the regular general or special election at which the measure is to be voted on; any person, committee

or organization opposing any measure may place with the secretary of state for distribution any pamphlets they may desire, not later than the first Monday of the fourth month immediately preceding such election; as to pamphlets advocating or opposing any measure referred to the people by the legislative assembly, they shall be governed by the same rules of time, but they may be placed with the secretary of state by any person, committee, or organization. * * * The secretary of state shall distribute to each county clerk, before the second Monday in the third month next preceding such regular general election, a sufficient number of said bound pamphlets to furnish one copy to every voter in his county. * * * The secretary of state shall not be obliged to receive or distribute any pamphlets advocating or opposing any measure unless the same shall be filed with him within the time herein provided."

The Constitution (Article V, sec. 1) provides that initiative petitions shall be filed not less than four months before the election at which they are to be voted upon. In respect to the Act under consideration, then, the filing of the petitions was completed just four months before the day of election, not [15] counting the last day of filing. Under this administrative statute (sec. 112, Rev. Codes), the time for placing with the secretary of state arguments for publication in opposition to any initiative measure runs from the date of the completion of the filing of the petitions for the submission of such measure (sec. 109, Rev. Codes), rather than from the date of the governor's proclamation announcing such fact; and it is noted from the complaint that persons so advocating the measure had a right to, and did, file pamphlets in support of the measure not later than the first Monday of June, which filing was in ample time, as the month of June was the fifth month preceding the general election held in November, 1920. Those desiring to oppose the measure should have filed pamphlets not later than the first Monday of the fourth month preceding the election, that is to say, the first Monday in July, and not having made such filing, complaint cannot be predicated upon that

theory. It is to be presumed that those interested in or opposed to the measure would take notice of petitions filed in the office of the secretary of state, and act accordingly. The secretary of state's office is the repository designated by statute and from which all persons interested may receive desired information on the subject independent of the notice and knowledge which would necessarily be brought to the attention of those opposed to the measure by the circulation of petitions and resultant newspaper comment. Knowledge of the law is presumed, and therefore persons interested know, or should know, that such petitions are filed with the secretary of state and that in his office information respecting same is available. Whether or not sufficient time has been given by the statute (sec. 112, Rev. Codes) within which to place with the secretary of state, and have distributed, arguments in opposition to the initiative measure, is a question which is directed to the legislative department of the government, rather than to the judiciary. This court must apply the law as it stands, and if it be thought by the people that the time allowed for opposition arguments to an initiative measure is insufficient, the legislative department of the government may be inclined to make amendments allowing further time.

As to whether thirty days is a sufficient time within which to place arguments in opposition to an initiative measure proposed after the date prescribed or the placing of arguments in favor thereof with the secretary of state, or whether the notice to the public of the filing of initiative petitions is adequate, is clearly a question for legislative determination. If the law does not permit a sufficient time to provide adequate notice, it may be amended by the legislative department. Courts have no concern as to the expediency, the wisdom, or the propriety of legislative Acts. (6 R. C. L. 107; *Godbe* v. *McCormick,* 1 Mont. 105; *Jay* v. *School District,* 24 Mont. 219, 61 Pac. 250; *State* v. *Holland,* 37 Mont. 393, 96 Pac. 719; *In re Pomeroy,* 51 Mont. 119, 151 Pac. 333; *State ex rel. Campbell,* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755;

and *State ex rel. Lyman* v. *Stewart,* 58 Mont. 1, 190 Pac. 129. In matters of legislative or governmental policy, the courts will not interfere. (*Hersey* v. *Neilson,* 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30.) The law-making power has spoken, and its edicts are controlling upon the court, unless violative of the Constitution. No such objection exists respecting the statute in question (sec. 112, Rev. Codes), and its provisions must be followed. Moreover, in the case under consideration there is no showing whatever of prejudice to anyone; nor is there any allegation that any person or persons whosoever desired to place arguments in opposition to the measure with the secretary of state. There is no merit in the suggestion that [16]   the filing of the petitions for an initiative measure with the secretary of state may not be made at different times. The only requirement is that the filing shall be complete "not less than four months before the election at which they are to be voted upon." (Sec. 1, Art. V, Const.) Section 107 of the Revised Codes expressly authorizes the petitions to be filed in "sections, for convenience in handling."

The order to show cause is set aside and the proceeding dismissed.

*Dismissed.*

Mr. Chief Justice Brantly and Associate Justices Reynolds and Cooper concur.

Mr. Justice Holloway: I dissent.