Justice Dirk Sandefur, concurring.
¶ 73 I concur in the ultimate result reached by the Court and much of its reasoning.
*622 However, I write separately to clearly state the reasons for my concurrence.
¶ 74 As a preliminary aside not at issue, I reject and condemn this Court's continuing use of a reasonable doubt standard for reviewing the constitutionality of statutes. As it has many times before, the Court again begins an analysis of the constitutionality of a statute by stating as the standard of review that:
***480 [a] statute is presumed constitutional unless it "conflicts with the constitution, in the judgment of this court, beyond a reasonable doubt." The party challenging the constitutionality of the statute bears the burden of proof. If any doubt exists, it must be resolved in favor of the statute.
Opinion, ¶ 13 (citations omitted). Certainly, legislative enactments are and should be presumed constitutional until clearly demonstrated otherwise upon legal analysis. However, reasonable doubt is inherently and exclusively a standard of factual proof . Nothing more. The question of whether a statute conflicts with a federal or state constitutional provision, whether facially or as applied to a certain factual scenario, is a pure question of law. Whether facially or as applied, a statute either conflicts with a constitutional provision as a matter of law or it does not. Without reference to "reasonable doubt" or "proof," the proper standard for reviewing the constitutionality of statutes should be that statutes are presumed constitutional until clearly demonstrated to conflict with a constitutional provision, whether facially or as applied to a particular set of facts. The party challenging the constitutionality of a statute has the burden of demonstrating the asserted unconstitutionality by appropriate legal analysis.
¶ 75 Turning to the matters at issue, I concur that the dollar-for-dollar private school tax credit program embodied in §§ 15-30-3101 to -3114, MCA, is not a direct or indirect "appropriation " as referenced in Article V, Section 11(5), or Article X, Section 6, of the Montana Constitution.[1] See State ex rel. Bonner v. Dixon , 59 Mont. 58, 78-79, 195 P. 841, 845 (1921), overruled in part by Bd. of Regents v. Judge , 168 Mont. 433, 447, 543 P.2d 1323, 1331 (1975), and Bd. of Regents , 168 Mont. at 446-47, 543 P.2d at 1331-32. In context, the constitutional phrase "appropriation" from "any public fund or monies" narrowly connotes an expenditure or commitment of public money in hand. I further concur that the program does not effect a direct payment from "any public fund or monies" as referenced in Article X, Section 6.
¶ 76 I concur, however, that as applied to religiously-affiliated private ***481 schools, the private school tax credit program effects an indirect payment of public monies for a sectarian purpose or to aid schools controlled in whole or in part by a church, religious sect, or religious denomination. Though it does not effect a direct or indirect "appropriation" or a direct payment, the program nonetheless diverts, on a dollar-for-dollar basis, funds otherwise earmarked and accrued to the public purse in the form of tax liability independently imposed by law. As applied to religiously-affiliated private schools, the undeniable purpose of the diversion is to further a sectarian purpose-the proliferation of the chosen religious beliefs and values of the participating parents-thereby further aiding private schools controlled in whole or in part by the affiliated church, religious sect, or religious denomination. As noted by the majority and previously by this Court, "[t]he most effective way to establish any institution is to finance it." The private school tax program is a clever, even somewhat ingenious, attempt by the Legislature to have the State provide affirmative financial aid to help parents enroll their children in private schools, not coincidentally including religiously-affiliated private schools. The Legislature attempted to accomplish this manifest objective through the guise of a facially neutral statutory scheme that does not reference religion *623 or religiously-affiliated schools and which directs an administrative agency to administer the scheme in a constitutional manner.
¶ 77 Plaintiffs assert, inter alia , that the program does not violate Article X, Section 6, of the Montana Constitution because the purpose and effect of the program is not to further a sectarian purpose or aid religiously-affiliated schools but, rather, merely to facilitate parental educational choice without regard for the choice made. They assert that any secondary benefit to religiously-affiliated schools is only incidental or de minimis . Despite the superficial appeal of this argument, closer examination quickly unveils the false distinction on which it is premised. Religiously-affiliated schools exist for the purpose of providing a quality general education, but with a specific emphasis on religious beliefs and values not taught in public schools. It is certainly conceivable that some parents, even though they do not subscribe to the affiliated religion, may nonetheless choose a religiously-affiliated school in pursuit of a quality general education perceived to be unavailable in public schools. However, the obvious and indisputable fact is that most, if not all, parents choose to send their children to a religiously-affiliated school for the specific purpose of educating their children with an emphasis on particular religious beliefs and values not taught in public schools. Providing children with ***482 particular religious instruction or emphasis incident to general education unquestionably aids and benefits the exercise and proliferation of those religious beliefs and values-the very raison d'être for religiously-affiliated schools. Tuition aids also help maintain enrollment in religiously-affiliated schools, thereby helping facilitate their continued existence and administration. However neutrally characterized, a law diverting money otherwise earmarked and accrued to the public purse to allow parents to choose religiously-affiliated schools is clearly tantamount to an indirect payment of government monies for a sectarian purpose and aids schools controlled in whole or in part by a particular church, religious sect, or religious denomination.
¶ 78 As an ancillary matter not necessary to the Court's decision in light of its primary holding, I further concur with the majority that the Department of Revenue exceeded the scope of its administrative rulemaking authority in adopting Rule 1. Regardless of its general charge to the Department to administer the private school tax credit program in a constitutional manner, the Legislature has long provided that administrative agencies have no authority to promulgate rules conflicting with or otherwise limiting a clear and unequivocal statutory provision. See § 2-4-305(6), MCA (limiting exercise of delegated administrative rulemaking authority to rules necessary to effect an express or manifest statutory purpose but in a manner consistent and not in conflict with the statutory language and effect).See also Mont. Const. art. III, § 1 (separation of powers between co-equal branches of government). The Legislature put the Department in a hopelessly untenable position-it enacted a facially neutral statutory scheme with obvious application, inter alia , to an unconstitutional purpose and effect, and then inconsistently charged the Department with the task of administering the scheme in a constitutional manner. The only way for the Department to carry out the Legislature's mandate was to administer the program in a manner inconsistent with the manifest intent and express provision of the statute-by declaring the tax credit unavailable to help fund the cost of sending children to religiously-affiliated schools.
¶ 79 I further concur with the Court's implicit holding, and Justice Gustafson's express concurrence, that as applied to religiously-affiliated schools, the private school tax credit program not only violates Article X, Section 6, of the Montana Constitution, but also violates the Establishment Clause of the First Amendment to the United States Constitution. As applied to the states through the Fourteenth Amendment, the Establishment Clause clearly, broadly, ***483 and unequivocally prohibits state governments from "mak[ing]" any "law respecting an establishment of religion...." U.S. Const. amend. I. As applied to religiously-affiliated schools, and for the same reasons that it violates *624 Article X, Section 6, of the Montana Constitution, the private school tax credit program constitutes a state law "respecting an establishment of religion." Whether viewed objectively or through the subjective view of the churches or religious denominations that provide and control religiously-affiliated schools, the provision of government tuition subsidies, aids, or incentives to facilitate enrollment in those schools is a substantial, if not essential, aid to the proliferation of the affiliated religions and the continued existence and administration of the schools.
¶ 80 Finally, I concur with the majority and Justice Gustafson's concurrence, that as applied to the private school tax credit program as it applies to religiously-affiliated schools, Montana's constitutional prohibition on the indirect payment of public monies for sectarian purposes or to aid schools controlled in whole or in part by a church, religious sect, or denomination does not violate the Free Exercise Clause of the First Amendment to the United States Constitution. As applied to state governments through the Fourteenth Amendment, the Free Exercise Clause does nothing more than clearly, broadly, and unequivocally prohibit state governments from "mak[ing]" any "law ... prohibiting the free exercise" of religion. U.S. Const. amend. I (emphasis added). Regardless of the increasingly value-driven hairsplitting and overstretching that unnecessarily complicates its modern jurisprudence, the Free Exercise Clause is nothing more than a protective shield against government interference in the free exercise of a citizen's chosen religion or religious views. The Free Exercise Clause is not, nor did the Framers intend it to be, a sword or affirmative right to receive government aid-precisely the manifestly intended purpose and effect of the private school tax credit program as applied to religiously-affiliated schools. Though there may indeed be some room for "play" in reconciling the Establishment and Free Exercise Clauses, the bottom line is that the Free Exercise Clause only prohibits the government from interfering with the exercise of religious beliefs, practices, and, by extension, related activities and operations of religious and affiliated entities. As applied to the private school tax credit program, Montana's constitutional ban on sectarian aid does not in any way interfere with or otherwise substantially burden the preexisting First Amendment right of parents to send their children to religiously-affiliated schools without government-imposed interference or impediment. Parents who wish to send their children to religiously-affiliated ***484 schools can and will continue to do so without government inference or impediment, just as they always have. As applied here, Article X, Section 6, of the Montana Constitution merely prohibits state and local governments from affirmatively promoting or facilitating the exercise of religious beliefs by diverting or foregoing government tax revenue for that purpose. The right to freely exercise religious beliefs without government interference or impediment cannot be reasonably stretched to require the state and its taxpayers to help pay for the exercise of that right through the diversion of otherwise earmarked and accrued government tax revenue.
¶ 81 Nor does Montana's broad constitutional ban on sectarian aid unconstitutionally discriminate on the basis of religion. Article X, Section 6 may well have broader application that might be problematic in some other context. But, as specifically applied to the particular private school tax credit at issue and its application to religiously-affiliated schools, Article X, Section 6 does not discriminate against the exercise of religion any more than the First Amendment Establishment Clause already lawfully does, just as intended and expressly provided by the Framers of the United States Constitution.
¶ 82 Having greatly benefitted from eight years of attendance in a religiously-affiliated elementary and middle school, I certainly understand the value and import to parents of educating their children with an emphasis on their chosen religious beliefs and values, parents' desire to further the proliferation of those beliefs and values, parents' fundamental right to make that choice for their children without governmental interference or impediment, and the concerted, well-intentioned efforts of powerful social and political forces to advance the proliferation of their respective religious beliefs in our state and *625 country. However, the federal and state constitutional prohibitions on government aid for sectarian purposes respectively embodied in the First Amendment Establishment Clause and Article X, Section 6, of the Montana Constitution do not conflict, and are perfectly consistent, with the fundamental right to freely exercise one's chosen religion. In balanced tandem, the Establishment and Free Exercise Clauses form one of the cornerstones upon which our country and federal and state constitutions were founded and framed to the benefit and protection of all-the clear separation of church and state regardless of the will of the majority at any given time. The Court today fulfills its constitutional oath and duty to neutrally recognize, enforce, and maintain that critical constitutional balance under our state and federal constitutions.
¶ 83 I concur.